UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LALITHA E. JACOB,

    Plaintiff,

v.                                        Case No: 8:22-cv-2435-CEH-TGW

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER

This matter comes before the Court on the Report and Recommendation of Magistrate Judge Thomas Wilson (Doc. 20). Magistrate Judge Wilson has recommended that the Court affirm the decision of the Commissioner of Social Security denying Plaintiff's claim for Social Security benefits. Plaintiff raises objections to the Report and Recommendation (Doc. 23), and the Commissioner has responded (Doc. 24). Having considered the Report and Recommendation and Objections, the Court will adopt the Report and Recommendation of the Magistrate Judge and affirm the decision of the Commissioner of Social Security denying Plaintiff's claim for Social Security benefits.

    **I.    BACKGROUND**

On November 21, 2019, Lalitha E. Jacob protectively applied for a period of disability and for disability insurance benefits ("DIB"), under the Social Security Act ("Act"), alleging disability as of December 31, 2014. (Tr. 16) The Agency denied her

application in an initial determination and subsequently on reconsideration. (Tr. 16) Plaintiff appeared with her counsel and testified at a telephone hearing on September 15, 2021 (Tr. 29–56), before an administrative law judge ("ALJ").[1]

Plaintiff was 56 years of age on the alleged disability onset date. (Tr. 731) She has a college education and past work as a physician. (Tr. 736–37) Plaintiff alleges she is disabled due to systemic lupus, autonomic neuropathy, myositis, herniated cervical discs, obstructive sleep apnea, diabetes, depression, cardiac arrythmia, diverticulitis of the colon, and PTSD. (Tr. 735)

At the administrative hearing held September 15, 2021, Plaintiff testified that she was in a car accident in 2006 which resulted in neck surgery in 2007 and 2008. (Tr. 37) She was in another auto accident in 2012. (Tr. 38) In June 2013, she slipped and fell, rupturing both ACLs, which required knee surgery in April 2015. *Id.* Her health conditions also include carpal tunnel in both hands, muscle ache and tiredness, multiple attacks of diverticulitis of the colon which resulted in a rupture and emergency surgery, bacterial infection in her eye that almost resulted in blindness, and cerebritis of the brain from her Lupus. (Tr. 39–40)

---

[1] An administrative hearing was initially held January 12, 2021, at which time Plaintiff tried to change her alleged onset date to January 1, 2013. (Tr. 62). The ALJ explained this was not possible because the prior adjudication of May 9, 2018, adjudicated the periods of time through December 31, 2015, and counsel could not identify a basis to reopen the May 9, 2018 final decision. (Tr. 62–63). At the September 15, 2021, hearing, counsel for Plaintiff argued that not all of Plaintiff's medical conditions were adjudicated in the May 2018 decision. (Tr. 34–35).

2

Plaintiff testified that she is a medical doctor, with a neurology specialty, and she has been practicing as a physician for over 25 years. (Tr. 36) She has additional training in anesthesiology and psychiatry. (Tr. 36-37) Plaintiff became very sick in 2007 due to Lupus, and her health problems led to her getting divorced, which made it even more critical that she hold onto her job. (Tr. 37) According to Plaintiff, she is a "workaholic," with a high work ethic. (Tr. 37) Although she was sick, she continued to push herself to keep her solo practice running with the assistance of full and part-time employees. (Tr. 37) Her patients insisted she continue working because she was doing pain management procedures that no other neurologist was doing. (Tr. 37) She used money from her personal accounts to cover the practice's overhead expenses and employees' salaries. (Tr. 37)

Plaintiff worked for Northside Hospital's "stroke alert" program beginning in 2008, and she would be paid high amounts for taking calls for a 24-hour shift. (Tr. 41) She claims in 2009 that she backed off work significantly due to the divorce because she was afraid of making a mistake because of lack of sleep, extreme depression, anxiety, and inability to focus or concentrate. (Tr. 44) Although she continued to do procedures at the hospital in 2009, 2010, and 2011, it is unclear whether she filed personal tax returns for those years.[2] Plaintiff testified that everything went to the accountant who handled her financials. (Tr. 44)

---

[2] The ALJ questioned Plaintiff why she did not submit and pay income taxes for many years while she was working as a medical doctor. (Tr. 36) For example, she had been taking hospital calls between 2008 and 2013, but she had not reported income for 2009, 2010, and 2011. (Tr. 41) Also, her 2017 tax returns were not submitted into evidence. (Tr. 55) Plaintiff testified that

3

Plaintiff testified that she continued to push herself to work because she did not have a spouse to rely upon and because she didn't want to throw away all her medical training. (Tr. 46–47) Because she had a solo practice with no partner to assist, she could not call it quits for the sake of her patients. (Tr. 47) To keep the office afloat, she had to generate money. (Tr. 47)

Although Plaintiff reported that she was unable to work as of December 2014, the ALJ questioned why her total income in 2015 was $194,000. (Tr. 48) Plaintiff testified that she stopped working completely in December 2017, and she explained that she continued to work up to that point because medicine is such a fast-paced, dynamic field that a doctor cannot take off six months at a time or they become rusty. (Tr. 48) Plaintiff further explained that whatever money she brought in was simply to cover overhead and pay employees. (Tr. 49) Between 2008 and 2017, she depleted her personal savings to keep the business going. (Tr. 49) She was paid to testify as an expert witness in court cases on behalf of her patients. (Tr. 50) Because of her many years of training, she was able to make a higher income for less hours of work. (Tr. 50) In recapping Plaintiff's testimony, the ALJ noted that Plaintiff earned $80,000 in 2012 and thereafter continued to work in 2014, 2015, 2016, until December 2017, but at reduced working hours during those years. (Tr. 51) Even though she continued to work

---

she had brain fog so bad during these years and that everything was handled by her accountant. (Tr. 54) Her accountant told Plaintiff that she had no earned income since 2012. (Tr. 49) In her Objections, Plaintiff states she has paid her taxes regularly since 1985. Doc. 23 at 2.

4

during those years, albeit sometimes less than ten hours per week, her accountant told her there was nothing left to pay herself. (Tr. 52)

After considering the testimony and evidence, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015 (Tr. 19). The ALJ found that Plaintiff had engaged in substantial gainful activity from January 1, 2014 through December 15, 2015. *Id*. Particularly, the ALJ noted that Plaintiff's 2014 business tax returns showed income of approximately $175,000, and her 2015 business tax returns showed income of approximately $194,000. *Id.* Based on this evidence, along with Plaintiff's testimony that she was the sole owner of the business and she continued to work as a physician until December 2017, the ALJ found she engaged in substantial gainful activity during the relevant timeframe. *Id.* The ALJ further found that through December 31, 2015, there was no continuous 12-month period during which the Plaintiff did not engage in substantial gainful activity. *Id.* Accordingly, in a hearing decision dated October 22, 2021, the ALJ found Plaintiff was not under a disability at any time from December 31, 2014, the alleged onset date, through December 31, 2015, the date last insured. (Tr. 16–20) On June 27, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 5–9)

On October 25, 2022, Plaintiff, proceeding *pro se*, initiated this action seeking judicial review of the ALJ's decision. Doc. 1. Plaintiff filed a memorandum in opposition to the Commissioner's decision (Doc. 16), and the Commissioner filed a brief in support of the Commissioner's decision (Doc. 18). On February 7, 2024, Magistrate Judge Wilson issued a report and recommendation recommending the

Commissioner's decision be affirmed. Doc. 14. On March 29, 2024, Plaintiff filed her objections to the Magistrate Judge's report (Doc. 23), to which the Commissioner replied (Doc. 24).

## II. LEGAL STANDARD

### A. Review of a Report and Recommendation

When a party makes a timely and specific objection to a Magistrate Judge's Report and Recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Board of Education of State of Georgia*, 896 F.2d 507, 512 (11th Cir. 1990). Objections to a Magistrate Judge's Report and Recommendation must be "specific" and "clear enough to permit the district court to effectively review the magistrate judge's ruling." *Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019). With regard to those portions of the Report and Recommendation not objected to, the district judge applies a clearly erroneous standard of review. *See Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993). The district judge may accept, reject, or modify in whole or in part, the Report and Recommendation of the Magistrate Judge. Fed. R. Civ. P. 72. The district judge may also receive further evidence or recommit the matter to the Magistrate Judge with further instructions. *Id*.

## B. Review of the Commissioner's Decision

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation marks and citation omitted). If the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the Court finds that the proof preponderates against it. *See* 42 U.S.C. § 405(g); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). In other words, the reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Phillips*, 357 F.3d at 1240 n.8 (quotation marks, citation, and alteration omitted).

## C. An ALJ's Five-Step Disability Analysis

The Social Security Administration employs a five-step sequential evaluation process to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)(4). The Eleventh Circuit has explained this process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from

>performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The plaintiff has the burden of proof on the first four steps; the Commissioner has the burden on the fifth step. *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 136-37 (11th Cir. 2009). If it is determined at any step in the analysis that the claimant is disabled or not disabled, the evaluation does not proceed. See 20 C.F.R. § 416.920(a)(4).

### III. DISCUSSION

A district court reviews a decision by the Commissioner of Social Security "to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm. Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Id.* at 1158-59 (citations and quotations omitted).

Here, a fair reading of Plaintiff's Objections is that she is claiming the Commissioner and the Magistrate Judge erred in finding that she was performing substantial gainful activity and in failing to fully address her medical issues.[3] "If a

---

[3] In her Objections, Plaintiff also makes preliminary statements that are directly contradicted by her testimony and the case history. She states she is seeking retroactive benefits for ten

8

claimant is working and the work is deemed substantial gainful activity, the Commissioner must find that the claimant is not disabled regardless of his medical condition, age, education, or work experience." *Pritchard v. Barnhart*, 140 F. App'x 815, 818 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520(b)). Plaintiff testified at the hearing that she was working up until 2017. In her objections, however, she attempts to minimize the income received for the work stating that the business receives income when her employees use equipment she owns, but this is belied by her testimony. Plaintiff is a self-described workaholic in a solo practice. By her testimony, she continued to work up until 2017. She provides a letter from her accountant to substantiate that she did not take home any personal income, but that does not fully answer the question as to whether Plaintiff was engaged in substantial gainful activity.

"Substantial work activity" is defined under the Regulations as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is defined as "work activity that you do for profit." 20 C.F.R. § 404.1572(b). The Regulations set forth three tests to determine whether a self-employed claimant, such as Plaintiff, has engaged in substantial gainful activity:

> (1) Test One: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business . . .
> (2) Test Two: You have engaged in substantial gainful activity if your activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your

---

years starting from 2013. As discussed at the administrative hearing and noted by the ALJ, there was a May 2018 final decision that adjudicated the period prior to December 31, 2014. Moreover, her date last insured is December 31, 2015. Thus, this is the relevant time frame.

9

>community who are in the same or similar businesses as their means of livelihood.
>(3) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2). If a plaintiff has not engaged in substantial gainful activity under test one, then the Commissioner will consider tests two and three.

Although the ALJ does not specifically state which test he applied, the decision notes that Plaintiff's 2014 and 2015 business tax returns showed income of $175,000 and $194,000, respectively. (Tr. 19) The ALJ further notes that Plaintiff testified she was the sole owner of the business and that she continued to work as a physician until 2017. *Id.* Thus, it is apparent that the first test is satisfied as she rendered services to the business and the business tax returns evidence substantial income.

Plaintiff argues that she did not have any take home pay, and she submits her personal tax returns in support. Doc. 23-2 at 2–9. The Regulations provide, however, that the Commissioner will not consider a claimant's income alone because the amount of income actually received may depend on a number of different factors, such as capital investment and profit-sharing agreements. *See* 20 C.F.R. § 404.1575(a)(2) ("We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services."). Here, the evidence showed that Plaintiff was the sole owner of the medical practice and the business reported income of nearly two hundred thousand dollars in calendar year 2015. Plaintiff submits that she has an excellent track record, attended the finest

medical schools, and given her training should have been making close to one million dollars. Be that as it may, her actual income still far exceeds the average earnings recognized by the Regulations as supporting a finding of substantial gainful activity. *See* 20 C.F.R. § 404.1574(b)(2). Because the Commissioner's decision is supported by substantial evidence, and Plaintiff fails to submit evidence to the contrary, the decision is due to be affirmed.

Plaintiff next explains her complex disease process that she argues disabled her in the first place. Because the ALJ's decision was made based upon a step one finding that Plaintiff was engaged in substantial gainful activity, the ALJ properly ended his analysis at that point and no further discussion of Plaintiff's medical conditions was warranted. *See* 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Substantial evidence supported the ALJ's step one finding, and thus the Commissioner's decision is due to be affirmed. Accordingly, it is

**ORDERED**:

1. The Objections of Plaintiff Lalitha E. Jacob (Doc. 23) to the Report and Recommendation of the Magistrate Judge are **OVERRULED**.

2. The Report and Recommendation of the Magistrate Judge (Doc. 20) is **ADOPTED**, **CONFIRMED**, and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

3. The decision of the Commissioner of Social Security denying Plaintiff's claim for Social Security disability benefits is **AFFIRMED.**

4. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security and against Plaintiff Lalitha E. Jacob.

5. The Clerk is further directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on July 26, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties